1

2

3

4

5

6

7

8

9

10

11

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WILLIE SMITH, | 3:13-cv-00202-MMD-WGC |
| Plaintiff, | **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| v. | |
| HOMES, et. al., | |
| Defendants. | |

12   This Report and Recommendation is made to the Honorable Miranda M. Du, United

13 States District Judge. This action was referred to the undersigned Magistrate Judge pursuant to

14 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice (LR) 1B 1-4. Before the court is

15 Defendants' Motion to Dismiss. (Doc. # 36.)[1] Plaintiff filed a response (Doc. # 41) and

16 Defendants filed a reply (Doc. # 54). Plaintiff also filed an "opposition" to Defendants' reply.

17 (Doc. # 54.)

18   After a thorough review, the court recommends that Defendants' motion be denied.

19                                  **I. BACKGROUND**

20   At all relevant times Plaintiff was an inmate in custody of the Nevada Department of

21 Corrections (NDOC). (Pl.'s Am. Compl., Doc. # 32.) The events giving rise to this action took

22 place while Plaintiff was housed at Southern Desert Correctional Center (SDCC). (*Id.*) Plaintiff

23 has named as defendants SDCC Caseworker Homes, SDCC Associate Warden of Programs

24 C. Burson, and SDCC Warden Brian E. Williams. (*Id.*) To date, only defendants Homes and

25 Williams have been served.[2]

26

27   [1] Refers to court's docket number.

28   [2] On May 5, 2014, the court issued an order instructing Defendants to attempt to verify whether the last
known address filed under seal for Ms. Burson is current. (Doc. # 47.) On May 15, 2014, they filed an updated last
known address under seal. (Docs. # 48, # 49.) On June 2, 2014, the court gave Plaintiff an additional forty-five days

On screening, the court determined that Plaintiff could proceed with a claim for retaliation against these Defendants. (Screening Order, Doc. # 5.) Plaintiff alleges that on April 21, 2011, he was transferred to SDCC from High Desert State Prison (HDSP) after he was beaten and denied medical treatment. (Doc. # 32 at 4.) On April 22, 2011, he asserts that he was taken to a review hearing by defendant Homes to be released from solitary confinement; however, once defendant Homes learned that an NDOC officer was being investigated for assaulting Plaintiff, Homes refused to allow Plaintiff to be released into general population and Plaintiff was held in solitary confinement for three months as a form of retaliatory punishment. (*Id.*) Plaintiff asserts that he contacted defendant Williams on several occasions and advised him of his situation and requested his help, to no avail. (*Id.* at 4-5.) He further avers that on June 13, 2011, he filed a grievance, but defendant Burson denied it, which he says confirms defendant Williams' policy of violating inmates' civil rights. (*Id.* at 5.) Plaintiff claims their conduct was retaliatory. (*Id.*)

In their Motion to Dismiss, Defendants argue that Plaintiff previously litigated and settled claims related to an alleged assault occurring at HDSP on March 24, 2011, in 3:12-cv-00024-LRH-VPC (case filed January 1, 2012). (Doc. # 36 at 2; Doc. # 36-1 (Compl. in 3:12-cv-00024-LRH-VPC.) They contend that on May 21, 2012, Plaintiff entered into a settlement in 2:12-cv-00024-LRH-VPC as part of a court-ordered early mediation. (Doc. # 36 at 3.) A written settlement agreement was prepared (Doc. # 36 at 3; Doc. # 36-2); however, Plaintiff then refused to sign the settlement agreement, arguing he entered into the agreement under duress. (*Id.*) The defendant filed a motion to enforce the settlement agreement. (Doc. # 36-3 at 2.) Magistrate Judge Cooke found that a settlement was reached on May 21, 2012, and issued a report and recommendation that the District Court enter an order enforcing the settlement agreement and dismissing the case with prejudice. (Doc. # 36-3.) The report and recommendation was adopted by District Judge Hicks. (Doc. # 36-2.) The settlement agreement was ratified as a binding settlement agreement and a copy of that document was attached to the order, the motion to enforce the settlement agreement was granted, and the case was dismissed with prejudice. (*Id.*)

to serve Ms. Burson. (Doc. # 53.)

Now, in this action Defendants point to a release of all claims provision contained within the written agreement ratified by the court and enforced against Plaintiff in 3:12-cv-00024-LRH-VPC which states that Plaintiff was agreeing to settle: "all claims, disputes and controversies arising from and related to the complaint filed in case 3:12-cv-0024-LRH-WGC." (Doc. # 36-3.)[3] Defendants contend that the administrative housing placement at issue in this case arose from the assault that was the subject of 3:12-cv-00024-LRH-VPC; therefore, pursuant to release of all claims provision contained in the written agreement, this action should be dismissed. (Doc. # 36 at 3-4.)

Plaintiff makes several arguments in opposing Defendants' motion. First, he contends that case 3:12-cv-00024-LRH-VPC has been appealed, and therefore it is not a final matter so Defendants may not argue it bars this action. (Doc. # 41 at 2, 4.) Second, he contends that the claims in this case are distinguishable from the claims asserted in the prior action; therefore, this action cannot be barred by res judicata principles. (*Id*. at 4.) Third, he asserts that the release language in 12-cv-00024-LRH-VPC did not contemplate this lawsuit because the events described in this action did not arise directly or indirectly from the facts described in the prior case. (*Id*. at 5.)

In their reply, Defendants assert that Plaintiff is confusing the doctrines of res judicata and collateral estoppel and that the retaliation claim in this case arises from the same transaction in which Plaintiff alleged the officer in 12-cv-00024-LRH-VPC used excessive force. (Doc. # 50.)  The further contend that the parties agreed to resolve "all claims, disputes and controversies arising from and related to the complaint" in 12-cv-00024-LRH-VPC, so the action must be dismissed. Finally, they contend that an appeal pending in 12-cv-00024-LRH-VPC does not open the door for the filing of a new lawsuit arising from that action. (*Id*.)

In his response to Defendants' reply (which Defendants have not moved to strike), Plaintiff argues that the release provision Defendants contend bars this action was not one of the terms the parties agreed to that was recited on the record in 3:12-cv-00024-LRH-VPC.

---

[3] As will be discussed, *infra*, the release of all claims provision contained in the written agreement was *not* one of the terms recited on the record following the mediation.

(Doc. # 54.)  While the Local Rules of Practice only permit the filing of a motion, response and reply, the court will afford Plaintiff, a pro se inmate litigant, with some latitude and will consider his response to Defendants' reply since the subject motion is potentially case-dispositive.

## II. LEGAL STANDARD

Defendants have filed this as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. # 36 at 2:21-22.) Defendants, however, rely on material beyond Plaintiff's complaint. (*See* Docs. # 36-1, # 36-2, # 36-3.) As a general rule, the court may not consider any material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim without converting it into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam) (the court will "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice"). Therefore, the court will consider this as a motion for summary judgment.

Plaintiff was advised after the motion was filed that if evidence was submitted with the motion, the court would treat it as a motion for summary judgment and was advised about what he needed to do to oppose the motion. (Doc. # 37.)

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Procedural History**

Plaintiff filed a complaint in 3:12-cv-00024-LRH-VPC, which was screened and filed on February 6, 2012, alleging that he had been assaulted by officers at HDSP on March 24, 2011, and was subsequently denied medical care for his injures. (*See* Doc. # 36-1; Doc. # 5 in 3:12-cv-00024-LRH-VPC.) The action was referred to the court's Early Mediation Program and Margaret Crowley was appointed as mediator in the case. (*See* Doc. # 36-3 at 2-3.) The mediation took

place on May 21, 2012, and at the conclusion Ms. Crowley went on the record to report that the parties had settled the case and placed the terms of the settlement on the record. (*Id.* at 3.) The settlement terms were stated on the record as follows[4]:

> 1. As soon as reasonably practicable, defendant will arrange for plaintiff to have a medical evaluation by a physician other than Dr. Koehn.
> 2. The physician will evaluate whether plaintiff should be treated with Tylenol or ibuprofen for his pain; whether plaintiff requires further treatment concerning his complaint of sinus problems; and will evaluate whether plaintiff requires any treatment, including braces or ace bandages, for his knees.
> 3. The parties will abide by the decision of the physician with respect to recommendations for treatment for these medical conditions.
> 4. The defendant will eliminate any debts plaintiff owes to NDOC to a balance of $0.
> 5. Plaintiff will not be required to pay the $350.00 filing fee.
> 6. Defendant will deposit the sum of $100.00 in plaintiff's inmate Trust II account, and this sum cannot be used to reduce plaintiff's other debts or charges.
> 7. The defendant will prepare a written settlement agreement stating these settlement terms.
> 8. After the settlement agreement is signed, the parties will stipulate to dismiss this case, and the lawsuit will end.
> 9. The court retains jurisdiction over the case until the settlement is concluded and the case ends.

(Doc. # 36-3 at 3.)

Ms. Crowley asked plaintiff and defendant's attorney if they agreed to these terms, and both stated on the record that they did agree to the terms. (*Id.*) She then asked if there were any additional terms that should be placed on the record. (*Id.*) Defendant's counsel replied that there was nothing more, and plaintiff replied, "Not that I know of." (*Id.*)  Notably, there was no mention of a release of all claims provision in the recitation of the terms.

Defendant's counsel then drafted a settlement agreement and prepared a stipulation and order dismissing the case with prejudice. (Doc. # 36-3 at 4.) The documents were delivered to Plaintiff for his review and signature, but he refused to sign them, arguing that he entered into the agreement under the pressure of the mediator and did not want to sign the documents. (*Id.*)

The settlement agreement entered into in 3:12-cv-00024-LRH-VPC states in pertinent part:

---

[4] The undersigned Magistrate Judge did not independently listen to the audio recording of the statement of terms placed on the record at the conclusion of the mediation but relies on the recitation of such terms in Magistrate Judge Cooke's report and recommendation in 3:12-cv-00024-LRH-VPC, as she indicates she did listen to the record and reported the terms. (*See* Doc. # 36-3.)

A. This Agreement addresses and resolves a dispute arising from and relating to Plaintiff's conditions of confinement during his incarceration in the Nevada Department of Corrections. This dispute concerns alleged Constitutional rights violations relating to Plaintiff's medical care, and allegations of use of excessive force during a certain period of time, as described in Plaintiff's civil rights complaint in Case 3:12-cv-00024-LRH-WGC[5], currently pending before the United States District Court for the District of Nevada.

...

THE NDOC AND PLAINTIFF HEREBY AGREE AS FOLLOWS:

A. CONSIDERATION, RELEASE AND DISCHARGE

The following legal consideration, release and discharge of claims is hereby exchanged by and among the NDOC and Plaintiff, in support of and in execution of this Agreement, **to settle all claims, disputes and controversies arising from and relating to the complaint filed in case 3:12-cv-00024-LRH-WGC.**[6]

...

2.      Plaintiff hereby releases and discharge the Defendants of and from any liability **relating to the civil rights complaint filed in case 3:12-cv-00024-LRH-WGC**.[7] Plaintiff agrees to execute a stipulation for dismissal of this lawsuit with prejudice.

...

C. COMPROMISE

The NDOC and Plaintiff agree that this Agreement is a complete compromise of matters involving disputed issues of law and **facts relating to the allegation asserted in this litigation.** The parties understand and agree that this Agreement is a compromise of a disputed claim. The parties understand and agree that the consideration given by the  NDOC in exchange for Plaintiff's consideration of dismissal of all claims against the NDOC asserted in case 3:12-cv-00024-LRH-WGC, as set forth herein, is not to be construed and shall never at any time for any purpose be considered an admission of liability on the part of any party.

...

E. DISMISSAL

Plaintiff hereby agrees to execute a *Stipulation and Order for Dismissal*, dismissing with prejudice all claims asserted against the NDOC and any/all Defendants in this litigation...

F. GOOD FAITH SETTLEMENT

This agreement is entered into in good faith. This Agreement fully settles all claims that Plaintiff has asserted against Defendants in case 3:12-cv-00024-LRH-WGC.[8]

(Doc. # 36-2 (bold emphasis added.)

The defendant filed a motion to enforce the settlement agreement in 3:12-cv-00024-LRH-

---

[5] This appears to be a typographical error in the case number and should read: 3:12-cv-00024-LRH-VPC.

[6] This is another typographical error in the case number, it should be 3:12-cv-00024-LRH-VPC (not WGC).

[7] Another error in the case number.

[8] Another error in the case number.

1   VPC. (*See* Doc. # 36-3 at 2; Docs. # 13, # 14 in 3:12-cv-00024-LRH-VPC.) Magistrate Judge

2   Cooke issued a report and recommendation on the motion on July 19, 2012. (*See* Doc. # 36-3;

3   Doc. # 17 in 3:12-cv-00024-LRH-VPC.) She indicated that she listened to the recording where

4   Ms. Crowley put the settlement terms on the record and reviewed the written settlement

5   agreement and found "that the oral agreement of the parties and the written agreement comport

6   with one another and that the settlement was complete" and that Plaintiff was not under duress in

7   entering into the agreement, and therefore the agreement should stand. (Doc. # 36-3 at 5; Doc. #

8   17 at 4 in 3:12-cv-00024-LRH-VPC.) Magistrate Judge Cooke recommended that an order be

9   entered ratifying the settlement agreement as a binding agreement, ordering the defendants to

10  perform as agreed, dismissing the case with prejudice and granting the motion to enforce the

11  settlement agreement. (Doc. # 36-3 6; Doc. # 17 at 5 in 3:12-cv-00024-LRH-VPC.)

12         On August 21, 2012, District Judge Larry R. Hicks entered an order adopting and

13  accepting Magistrate Judge Cooke's report and recommendation. (Doc. # 36-2; Doc. # 18 in

14  3:12-cv-00024-LRH-VPC.) Therefore, the settlement agreement, which was attached as Exhibit

15  A to Doc. # 13 in 3:12-cv-00024-LRH-VPC, was ratified as a binding agreement, the defendants

16  were ordered to perform under the agreement, the motion to enforce the settlement agreement

17  was granted, and the action was dismissed with prejudice. (*Id.*)

18         On July 26, 2013, the court screened and filed Plaintiff's complaint in this action (3:13-

19  cv-00202-MMD-WGC). (Docs. # 5, # 6.) As stated above, Plaintiff was permitted to proceed

20  with a retaliation claim against SDCC defendants Homes, Burson and Williams based on the

21  allegation that when he was transferred to HDSP from SDCC following his beating and denial of

22  medical care, Caseworker homes declined to allow him out of solitary confinement when he

23  determined another correctional officer was being investigated for assaulting Plaintiff. (*Id.*) He

24  contends Williams refused to intercede on his behalf when made aware of the situation, and

25  Burson's response to his grievance confirmed Williams' policy and custom of violating his

26  constitutional rights. (*Id.*)

27         Defendants now point to the release of all claims provision contained in the written

28  settlement agreement in 3:12-cv-00024-LRH-VPC to argue that Plaintiff agreed to release "all

claims, disputes and controversies" arising from that complaint. (Doc. # 36 at 3-4.) They contend that the release of all claims provision bars this action because the placement in administrative segregation at HDSP arose from the assault allegations made in 3:12-cv-00024-LRH-VPC. (*Id.*)

The relevant language of the settlement agreement relied on by Defendants in their motion to dismiss this action is the release provision which states that Plaintiff was agreeing to "settle all claims, disputes and controversies arising from and relating to the complaint filed in" 3:12-cv-00024-LRH-WGC. Thus, the court must first determine whether this release provision is valid and enforceable against the Plaintiff.

**B. Was the Release of all Claims Provision Part of the Agreement Between the Parties in 3:12-cv-00024-LRH-VPC?**

The court has inherent authority under federal law to enforce a settlement agreement in an action pending before it. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987); *see also Marks-Foreman v. Reporter Pub. Co.*, 12 F.Supp.2d 1089, 1092 (S.D. Cal. 1998) (citations omitted). The settlement agreement must be complete, *Callie*, 829 F.2d at 890, and both parties must have agreed to its terms. *See Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir. 1977).

As indicated above, "the construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *O'Neil v. Bunge Corp.*, 365 F.3d 820, 832 (9th Cir. 2004) (internal quotation marks and citations omitted) (applying Nevada law); *see also Turnberry Pavilion Partners, L.P. v. M.J. Dean Constr., Inc.*, No. 2:07-CV-01042-KJD-PAL, 2009 WL 905055, at * 3 (D. Nev. 2009) (Nevada law governed interpretation of the contract), *reversed on other grounds*, 378 Fed.Appx. 758 (9th Cir. 2010).

In Nevada, settlement agreements are contracts governed by general principles of contract law. *May v. Anderson*, 119 P.3d 1254, 1257, 121 Nev. 668, 672 (2005) (citation omitted). "Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds and consideration." *Id.* (citation omitted). "A valid contract cannot exist when material terms are lacking or are insufficiently certain and definite." *Id.* (citation omitted).

The Nevada Supreme Court has stated that "release terms are generally thought to be material to any settlement agreement." *Id.* (citation omitted). Thus, "the essential terms of a release are necessary to a settlement agreement's formation and that the parties have not reached a settlement when the release terms are still in dispute." *Id.* (citation omitted). "However, what is considered an 'essential term' of a release varies with the nature and complexity of the case and must, therefore, be determined on a case-by-case basis." *Id.* (citation omitted).

> [A]n enforceable settlement agreement cannot exist when the parties have not agreed to the essential terms of the release because these provisions constitute a material term of the settlement contract. Release terms are not a mere formality. They are an important reason why a party enters into a settlement agreement. If the prevention of future litigation is one of the primary goals of a settlement, the essential terms of the release needed to achieve that goal are material to the settlement agreement.

*Id.* at 119 P.3d at 1259, 121 Nev. at 674.

The court concludes that the record before it does not reflect that the release of all claims provision now proffered by Defendants was one of the terms agreed to by Plaintiff following the mediation; instead, it appears that it was essentially a new term included in the written agreement prepared by the defendant following the mediation.

In relying on the release of all claims provision contained in the settlement agreement in 3:12-cv-00024-LRH-VPC in their Motion to Dismiss this action, Defendants did not point out that the release provision in the written agreement was *not* one of the terms recited on the record at the conclusion of the mediation by Ms. Crowley. In fact, the terms placed on the record following the mediation only states the following concerning the dismissal of the action: "[t]he defendant will prepare a written settlement agreement stating these settlement terms" and "[a]fter the settlement agreement is signed, the parties will stipulate to dismiss this case, and the lawsuit will end." (Doc. # 36-3 at 3.) There was no recitation of a term that indicated the parties agreed (and more specifically the Plaintiff) to a release of all claims arising from or related to the allegations of 3:12-cv-00024-LRH-VPC. Moreover, when Ms. Crowley asked whether either party was aware of any additional term that was a part of the agreement, both sides answered they were not aware of any additional term. (*Id.*) As the procedural history of 3:12-cv-00024-LRH-VPC reflects, Plaintiff refused to sign the written agreement which eventually contained

1    the release of all claims provision which Defendants rely on now. While the written agreement

2    was ultimately ratified and enforced against the Plaintiff in that action, it was not mentioned that

3    the release of all claims provision in the written agreement did not comport with the recitation of

4    settlement terms at the conclusion of the mediation.

5          Plaintiff takes the position that he did not agree to the release provision contained in the

6    written settlement agreement that Defendants now offer as the basis for dismissing this action.

7    (Doc. # 54.) This is not fatal to formation of the agreement to settle 3:12-cv-00024-LRH-VPC

8    under *May v. Anderson*. Here, it is clear (as adjudicated by Magistrate Judge Cooke and District

9    Judge Hicks) there was an offer, acceptance, meeting of the minds and exchange of consideration

10   with respect to the agreed upon terms recited on the record at the conclusion of the mediation

11   which were then spelled out in the written agreement. The release of all claims term proffered by

12   Defendants in this action, however, was not one of the terms included on the record following

13   the mediation in 3:12-cv-00024-LRH-VPC. That does not mean that the terms agreed to by the

14   parties were wanting for an essential term. Instead, it appears that the release topic is

15   encompassed in those recited terms which indicate that the parties agreed that the release would

16   be limited to the release of the claims asserted in that action and against that defendant *only*

17   because the only component that Plaintiff agreed to on the record is that "the parties will

18   stipulate to dismiss *this* case" (3:12-cv-00024-LRH-VPC) and "the lawsuit will end." (Doc. # 36-

19   3 at 3; Doc. # 17 at 2 in 3:12-cv-00024-LRH-VPC (emphasis added)). This conclusion is further

20   supported by the fact that Mediator Crowley asked whether the parties knew of any additional

21   terms that should be placed on the record, and both stated there were none. (*Id*.) If the defendant

22   thought the parties had agreed to a broader release of claims, such as one applying to any claim

23   arising from or relating to that case, the issue should have been raised at that time.

24         If it is Defendants' contention that the parties did discuss a broader release provision

25   during their mediation negotiations in 3:12-cv-00024-LRH-VPC, but it was not included in the

26   recitation of terms on the record, that is something they will have to litigate. In any event, the

27   record before the court does not permit it to grant summary judgment in favor of Defendants

28   based on the release language in the written agreement because of the existence of genuine

1  disputes of material fact as to whether it was a term of the agreement between the parties.

2      This result is consistent with *May v. Anderson* which states that "what is considered an

3  'essential term' of a release varies with the nature and complexity of the case and must, therefore,

4  be determined on a case-by-case basis." *May v. Anderson*, 119 P.3d 1254, 1258, 121 Nev. 668,

5  673 (2005) (citing *Giovo v. McDonald*, 791 So.2d 38, 40 (Fla. Dist. Ct. App. 2001)). *May* also

6  appears to leave open to Defendants the option of arguing that the release provision in *this* case

7  was *not* an essential term. *See id.* at 119 P.3d at 1258, 121 Nev. at 674 (recognizing that some

8  courts have found the terms of a release to be inconsequential, but distinguishing those cases

9  from the facts presented in *May*). Defendants have not raised that argument here; therefore, the

10 court will not address it.

11     In conclusion, Plaintiff has raised a genuine dispute of material fact as to whether the

12 release of all claims provision was a term of the agreement between the parties to settle 3:12-cv-

13 00024-LRH-VPC.

14     **3. Was the Release of all Claims Entered into Voluntarily, Deliberately and on an**

15 **Informed Basis?**

16     Even assuming that the release of claims provision was a term of the settlement entered

17 into by the parties in 3:12-cv-00024-LRH-VPC, Defendants are still not entitled to summary

18 judgment based on that provision.

19     "Typically, '[t]he construction and enforcement of settlement agreements are governed by

20 principles of local law which apply to interpretation of contracts generally.'" *O'Neil v. Bunge*

21 *Corp.*, 365 F.3d 820, 822 (9th Cir. 2004) (quoting *United Comm. Ins. Serv., Inc. v. Paymaster*

22 *Corp.*, 962 F.2d 853, 856 (9th Cir. 1992)); *see also Botefur v. City of Eagle Point*, 7 F.3d 152,

23 156 (9th Cir. 1993). However, "conditions affecting the validity of a release of significant federal

24 rights are eminently a matter of federal law." *Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir.

25 1981) (citation omitted). "A release of claims under section 1983 is valid only if it results from a

26 decision that is voluntary, deliberate, and informed." *Id.* (citation omitted). "In the context of

27 section 1983 waivers, several factors are relevant: although both parties may agree on certain

28 facts, including the accuracy of the transcript of the claimed settlement conference, summary

- 13 -

judgment is precluded when conflicting inferences might be drawn about a party's state of mind as reflected by objective indications." *Id*. at 1204. In *Jones,* the court concluded that even the fact that Jones admitted that his signature on the release was "voluntary" was not controlling. *Id.* at 1204. In analogizing the circumstances of section 1983 plaintiffs to those of maritime claimants faced with waivers or releases of claims, the court commented: "The federal solicitude for claimants under section 1983 is at least as great as that for seamen and in both situations the claimant's dependence on potential defendants requires the release to be examined with particular care." *Id*. at 1204-05. The party seeking to rely on a release in a section 1983 action has the burden of proving its validity. *See id.* at 1203-04.

Here, Defendants include no argument regarding the validity of the release contained in the settlement agreement entered ratified in 3:12-cv-00024-LRH-VPC, other than to state that the agreement was ratified and enforced by the court in that action. The court does not view this as sufficient for Defendants to meet the burden of establishing the absence of a genuine dispute of material fact as to the affirmative defense asserted in their dispositive motion. Even if Plaintiff had agreed to the release of all claims provision as a term of the settlement, the court cannot conclude on the record before it that Plaintiff voluntarily and deliberately agreed to this release of all claims provision or that he was informed of the consequences of doing so.

As was discussed, *supra*, there is a material issue regarding whether or not Plaintiff even agreed to the release of all claims provision as a term of the settlement in 3:12-cv-00024-LRH-VPC. Viewing the facts in the light most favorable to Plaintiff, *i.e.,* that there was no meeting of the minds to include it as one of the settlement terms, this tends to demonstrate that Plaintiff did not deliberately or voluntarily agree to a release of all claims. Nor is there any evidence in the record that Plaintiff was informed of the consequences of such a release provision.

Plaintiff was an indigent inmate litigant representing himself at the mediation while the defendant had the benefit of an attorney. *See Jones*, 648 F.2d at 1205 ("[w]e do not foreclose a finding of a voluntary release when the release is entered into by a prisoner without presence or assistance of counsel, but these circumstances must be weighed carefully"). While the absence of counsel does not always mean that a release was not voluntary or deliberately entered into, this

1    fact militates in favor of finding that it was not.

2        While the court does not have specific information about Plaintiff's state of mind or

3    whether the atmosphere was particularly coercive or non-coercive, the court notes that Plaintiff

4    did argue in opposition to the motion to enforce the settlement that he felt pressure to enter into

5    the agreement.[9] While Magistrate Judge Cooke and District Judge Hicks ultimately concluded

6    that Plaintiff agreed to enter into a settlement agreement and was not under duress to do so, this

7    is at least relevant as to his state of mind insofar as the release of all claims provision is

8    concerned, particularly where that provision was not one of the terms recited on the record at the

9    conclusion of the mediation.

10       In sum, a genuine dispute of material fact exists as to whether Plaintiff agreed to the

11   release of all claims provision proffered by Defendants and if he did, whether he did so

12   voluntarily, deliberately and after being informed of its consequences. Therefore, Defendants'

13   motion should be denied.

14       Because of these disputed issues of fact, the court need not reach the issue raised by

15   Defendants of whether this action *arises from or is related to* 3:12-cv-00024-LRH-VPC. If the

16   release provision is ultimately held to be valid and enforceable against the Plaintiff (*i.e.,* it is

17   determined that it was a term of the settlement and it was voluntarily and deliberately agreed to

18   after Plaintiff was informed of its consequences), the parties will then have an opportunity to

19   address the interpretation of this contract provision and can argue whether or not the release is

20   ambiguous and whether it encompasses the specific allegations asserted in this lawsuit under

21   Nevada law. *See Sheehan & Sheehan v. Nelson Malley and Co.*, 117 P.3d 219, 223, 121 Nev.

22   481 (2005) (in Nevada, contract interpretation is a legal issue determined by the court); *accord*

23   *Canfora v. Coast Hotels and Casinos, Inc.*, 121 P.3d 599, 603, 121 Nev. 771 (2005) (per curiam)

24   _____

25       [9] This Report and Recommendation is *not* calling into question the determination made by Magistrate
     Judge Cooke and District Judge Hicks to enforce the settlement agreement against Plaintiff insofar as they

26   determined that the recitation of terms on the record at the conclusion of the mediation comported with the material
     terms in the written agreement. The undersigned does conclude, however, that the release of all claims provision

27   contained in the written agreement was not one of the terms recited on the record by Ms. Crowley. As discussed,
     *infra,* this is not fatal to the formation of the settlement agreement in 3:12-cv-00024-LRH-VPC. It does raise several
     issues regarding the Defendants' reliance on the release of all claims provision in *this* action: whether it was a term

28   of the settlement and if so, whether Plaintiff agreed to a release of all claims arising from or related to 3:12-cv-
     00024-LRH-VPC voluntarily, deliberately and after being sufficiently informed of the consequences.

1   (and stating that unambiguous contracts (those not reasonably susceptible to more than one

2   interpretation) are interpreted according to their plain meaning).

3   ### IV. RECOMMENDATION

4   **IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING**

5   Defendants' Motion to Dismiss (Doc. # 36).

6   The parties should be aware of the following:

7   1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to

8   this Report and Recommendation within fourteen days of receipt. These objections should be

9   titled "Objections to Magistrate Judge's Report and Recommendation" and should be

10  accompanied by points and authorities for consideration by the district judge.

11  2. That this Report and Recommendation is not an appealable order and that any notice of

12  appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

13  until entry of judgment by the district court.

14

15  DATED: June 19, 2014.

16  _____
    WILLIAM G. COBB

17  UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28